IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No: 1:19-CR-57 |
| v. ) | |
| ) | The Honorable Liam O'Grady |
| KYU WA HONG ) | |
| ) | Sentencing Date: January 12, 2021 |
| Defendant. ) | |

## DEFENDANT'S POSITION WITH RESPECT TO SENTENCING

COMES NOW, the defendant, Kyu Wa Hong, by and through undersigned counsel, pursuant to 18 U.S.C. §3553(a), Section 6A1.3 of the United States Sentencing Guidelines and this Court's policy regarding guideline sentencing, and submits the following Position with Respect to Sentencing. Counsel certifies that he discussed the Pre-sentence Investigation Report with Mr. Hong and objects to the determination of a Total Offense Level of 35 resulting in a guidelines range of 210 to 262 months. Specifically, Mr. Hong objects to the findings that he was a leader and organizer of the conspiracy. Because he was not the leader of the conspiracy he should not have been assessed the 4-point enhancement. Though Mr. Hong does not object to the determination of a Criminal History Level III, he believes his criminal history level overstates his criminal history and should be recategorized as a Level II. Mr. Hong's objections and argument for a recategorized criminal history level are outlined below. With these adjustments, Mr. Hong's Total Offense Level is 31 resulting in a guidelines range of 121 - 151 months.

After consideration of the recalculated guidelines range and the factors pursuant to 18 U.S.C. §3553(a), Mr. Hong respectfully requests this court impose a sentence within the recalculated guidelines range of 121 to 151 months.

I. **Offense Conduct**

The Reccless Tigers is a predominantly Asian gang initially operating out of Northern Virginia.[1] Mr. Hong was recruited by Joseph Duk-Hyun Lamborn (hereinafter "Lamborn") in 2008.[2] Shortly after the start of the conspiracy in 2011, Mr. Hong left Northern Virginia and moved to Las Vegas, Nevada with his family.[3] Mr. Hong returned to Northern Virginia in 2013 until moving back to Las Vegas in 2017.

The primary source of revenue for the Reccless Tigers is drug distribution.[4] During his time in the gang, Mr. Hong distributed cocaine, marijuana and other controlled substances.[5] In addition to distributing drugs, "gang members are expected to participate when something 'goes down.'" If gang members do not participate, they are assaulted by other members. They are also expected to participate in retaliatory assaults.[6] As a member of the gang, Mr. Hong engaged in violent acts of intimidation against individuals that owed money to the gang.[7]

---

[1] PSR #41
[2] PSR #42
[3] PSR #158
[4] PSR #45
[5] PSR #89
[6] PSR #62
[7] PSR #94,95,96

In February 2019, Mr. Hong learned of Brandon White's murder and was recruited to assist in the attempt to hide Brandon White's body. He did not know about the kidnapping and murder of Brandon White until after it had occurred.[8]

## II. Objection to the Guidelines Calculations

The PSR assesses Mr. Hong four (4) points as a leader in the conspiracy based on the conclusion that Mr. Hong was an "original member and leader" of the gang and therefore responsible for overseeing all gang related activity.[9] Mr. Hong has admitted and agreed that as one of the original members of the gang, other members and associates regarded him as an influential member.[10] Influence alone is not leadership. Though the conspiracy began 2011, Mr. Hong's association with Lamborn (and through Lamborn to the other founding members) began around 2008. Mr. Hong lived in Las Vegas from mid-2011 through 2013[11], coinciding with start of the conspiracy.[12] His involvement is not greater than that of Dane Hughes who managed the gang's drug distribution operations[13], nor that of Tasneef Chowdhury who was second in command for the gang's grow operations in California.[14] Mr. Hong was absent from Northern Virginia for a total of 4 years while in Las Vegas[15] and an additional 9 and a half months between 2014 and 2015 while serving sentences related to 2013 arrest in Fairfax County, Virginia.[16]

---

[8] PSR #102 - 108
[9] PSR #114
[10] PSR #88
[11] PSR 3158
[12] PSR #87
[13] PSR #117
[14] PSR #118
[15] PSR #158, 160
[16] PSR #139

When absent from Northern Virginia, Mr. Hong was less active and involved in the gang's activities.

The Commission included the leadership role enhancement out of a concern for relative responsibility, recognizing that leaders are more likely to profit and present a greater danger to the public. "The Commission's intent is that this adjustment should increase with both the size of the organization and the degree of the defendant's responsibility."[17]

To distinguish leaders and organizers from mere managers and supervisors Note 4 provides seven non-exhaustive factors:

(i) the exercise of decision making authority,

(ii) the nature of participation in the commission of the offense,

(iii) the recruitment of accomplices,

(iv) the claimed right to a larger share of the fruits of the crime,

(v) the degree of participation in planning or organizing the offense,

(vi) the nature and scope of the illegal activity, and

(vii) the degree of control and authority exercised over others.

Each of these required factors weigh against a conclusion that Mr. Hong is a leader in the conspiracy.

Mr. Hong did not (i) exercise decision making authority over the co-conspirators. As noted, he had influence and his opinion was respected and even sought out. However his involvement primarily in the sale of cocaine kept him in a smaller circle than the

---

[17] USSG §3B1.1 Note 4.

4

majority of members involved in the marijuana trade, generally working with Soung Park.[18]

Beyond the longevity of his association with the founding leaders of the gang and the regard of other Reccless Tigers, there is little to distinguish Mr. Hong's (ii) participation in the commission of the offense from other "average participants" such as Tyler Sonesamay (hereinafter "Sonesamay"), Fahad Abdulkadir (hereinafter "Abdulkadir") or Soung Park (hereinafter "Park"). Like them he "assisted in furtherance of the gang's activities in various ways" such as drug distribution and committing violent acts on behalf of the gang.[19]

Though Mr. Hong participated in (iii) gang recruitment and initiation activities such as "jump ins" as expected of all gang members[20], this has not led to the blanket application of the enhancement. Abdulkadir, for example recruited Abdullah Sayf (hereinafter "Sayf") to aid in the kidnapping of Brandon White.[21]

Mr. Hong did not (iv) claim a leader's share, let alone the largest share of the fruits of the conspiracy. As mentioned above, Mr. Hong's drug activities largely involved the sale of cocaine to another "average participant" and obtained his marijuana Tony Le.[22]

Mr. Hong was not (v) responsible for planning or organizing gang activities. As discussed *supra*, he was absent from Northern Virginia for several years, either having relocated to Las Vegas or due to incarceration. His participation in drug distribution

---

[18] *United States v. Soung Park*, 1:19-364, Dkt #39, Position of the United States on Sentencing, pg. 3
[19] PSR #119
[20] PSR #41
[21] Dkt #507, *United States v. Fahad Abdulkadir, Government's Position on Sentencing, pg. 7*
[22] PSR #89

5

activities and violent crimes was expected of all gang members and not indicative of any responsibility for planning or organization.

Mr. Hong's (vi) criminal activity was similar in nature and scope to many of "average participants." His activities were not equal to that of Tony Le, the leader of the gang[23], nor Peter Le, the leader of Reckless Tigers in Northern Virginia[24], nor Peter Miliaresis (hereinafter "Miliaresis") who ran the California grow operation and orchestrated Tony Le's investment in the farm[25]. Nor was his activity similar in scope to other members who were assessed 3 points as managers, such as Dane Hughes (hereinafter "Hughes") who ran the gang's distribution network[26] and Tasneef Chowdhury (hereinafter "Chowdhury"), Miliaresis's deputy at the farm.[27]

Though Mr. Hong does not dispute he was respected and influential, he did not (vii) exercise authority over others to degree of Tony and Peter Le, Miliaresis or even managers such as Hughes or Chowdhury. Influence alone is not leadership and Mr. Hong should not be assessed 4 points as a leader of the Reccless Tigers. Mr. Hong's Total Offense Level should be calculated at 31.

### III. Mr. Hong's Criminal History is overstated

Though Mr. Hong does not object to the calculation of his Criminal History Level, he believes it overstates his criminal history. The Court may depart downward from a

---

[23] PSR #114
[24] PSR #115
[25] PSR #116
[26] PSR #117
[27] PSR #118

defendant's criminal history level if the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes.[28]

      Mr. Hong's criminal history level is based on a single felony conviction and two misdemeanors. Mr. Hong is assessed 2 points for his 2014 conviction for Possession with Intent to Distribute and subsequent probation violation and 1 point for his 2015 conviction for Possession of a Schedule III Drug.[29] He receives an extra point however, for his reckless driving conviction in 2018[30] and an additional 2 points for being on that probation during the course of the conspiracy.[31] Mr. Hong was on probation from July 18, 2014 to May 15, 2015 for his conviction for the 2013 marijuana charges in Fairfax County and from January 4, 2018 to January 3, 2020 for his conviction of reckless driving in California. Mr. Hong's criminal category is inflated from level II to III as a result of a 2 year probationary period for a traffic offense and a 10 month probationary period imposed on prior sentenced gang related offenses. This overstatement increases his guidelines range from 188 - 235 months to 210 - 262 if this Courts finds Mr. Hong a leader or from 121 - 151 to 135 - 168 if this court agrees Mr. Hong is not a leader of the conspiracy. Given that all of Mr. Hong's non-traffic related offenses are related to his activities with the Reccless Tigers, a criminal history level III overstates the seriousness of Mr. Hong's criminal history and the likelihood of recidivism.

---

[28] USSG § 4A1.3(b)(1)
[29] PSR #139, 141
[30] PSR #144
[31] PSR #146

7

IV. **Factors to be considered in imposing sentence**

Pursuant to the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738, 757 (2005) and 18 U.S.C. §3553(a), this court may consider permissible statutory factors such as: the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from future crimes of the defendant, and to provide the defendant with reasonable rehabilitative opportunities, the kinds of sentences available, the guideline range, the need to avoid unwanted sentencing disparities, and the need for restitution.

    A.   Nature and Circumstances of the Offense

Mr. Hong was recruited by his friend into the Reccless Tigers at the start of the conspiracy in 2011. Over the course of the next 8 years, Mr. Hong became a trusted and respected member of the gang due to his early membership and the credibility he gained by participating in gang "missions" and serving jail time for participating in gang activities.

Over the life of his participation in the gang, Mr. Hong was able to distance himself from the gang on two occasions; first when he moved to Las Vegas with his family shortly after the inception of the conspiracy and again, when he voluntarily returned to Las Vegas after serving a sentence for his first felony conviction. Each time, he left, Mr. Hong returned to Northern Virginia out of a sense of loyalty and his attraction to the money he earned through his participation in the conspiracy.

During his participation in the conspiracy, Mr. Hong was an exemplary soldier, engaging in all the activities required and expected of a gang member; he sold drugs and he engaged in acts of violence on those who transgressed against the gang, whether members or rivals. After his second attempt to separate from the gang, Mr. Hong was again drawn back by loyalty and the money that participation in the gang afforded. In the end, he was recruited to assist in hiding Brandon White's body by his oldest friend and original recruiter into the Reccless Tigers.

B. History and Characteristics of the Defendant

Mr. Hong was born in Incheon, South Korea in 1993.[32] Immediately after his birth, he was diagnosed with Transient Tachypnea. His parents were told to expect the worst and immediately called for a priest to have him baptized. Their prayers were answered and Mr. Hong not only survived but thrived, becoming a healthy and active boy.[33] As a result of his father's profession as an architect, the family moved frequently throughout South Korea. When Mr. Hong was 8, the family moved to the United States, first settling in Maryland. The family moved to Virginia 2 years later, first to Burke to Lorton soon after.[34] During the first few years in the United States, Mr. Hong excelled in school and sports.[35] Committed to assimilating into American life, Mr. Hong chose to make English his primary language, though this led to a distancing from his parents who continued to speak Korean in the home.[36]

---

[32] PSR #156
[33] Defendant's Position on Sentencing, Attachments, Letters of Support by Mr. and Mrs. Hong
[34] PSR #157, 158
[35] Id., note 33
[36] PSR #159

9

In middle school, however, Mr. Hong first experienced bullying due to his accent and foreign birth. The bullying ultimately led to a fight and both Mr. Hong and the other boy were suspended. Sadly, but unsurprisingly, Mr. Hong began to refuse to go to school.[37] Mr. Hong's brother, Inn "Brian" Hong, was his best friend and confident. Three years older and better able to hide his accent, Brian Hong had an easier time assimilating to Northern Virginia life and supported Mr. Hong and encouraged him to return to school.[38] With the strong support of Brian Hong, Mr. Hong returned to school, gave up sports and limited his social circle to other Asian children, including Lamborn.

Brian Hong left to attend college in Las Vegas a few years later. Soon thereafter, Lamborn invited Mr. Hong to join the Reccless Tigers. Initially the Reccless Tigers were a gang in name only and more of a social club than a criminal conspiracy. As the Reccless Tigers graduated to a criminal enterprise, the stability of Mr. Hong's family life was crumbling. His parents' business was failing and the house was foreclosed. The gang served as a replacement family after Brian Hong's absence and an escape from the stress in the family home. Shortly after the start of the conspiracy, Mr. Hong moved to Las Vegas with his parents.[39]

In Las Vegas, Mr. Hong was reunited with his brother and graduated from high school. But he remained in contact with his replacement family and felt a deep sense of loyalty to them. Ultimately, the pull of loyalty and the money the came from drug distribution drew Mr. Hong back to Northern Virginia and the Reccless Tigers. He quickly became deeply involved in the drug distribution operation and model gang member, always willing to participate in the

---

[37] Id., note 33
[38] PSR #158
[39] PSR #88, 158

10

"missions" that increased the gang's reputation with both rivals and new members. Mr. Hong also was arrested for his gang related criminal activities and served time - all of which increased the regard with which the newer gang members held for him, raising his reputation and influence.

But the main draw of the Reccless Tigers, his deep loyalty to his childhood friends, was on the wane. Tony Le moved to California and factions were created when Peter Le took over the Virginia operations. As the criminal activities of the gang increased and Mr. Hong returned to jail on a probation violation, he needed to get away. In 2017, about 3 years after returning to Northern Virginia, Mr. Hong returned to his family in Las Vegas.

Back in Las Vegas, Mr. Hong began a serious relationship and worked to honor the sacrifices his parents had made for him. Despite their shock and dismay at his turn to criminality and gang activity, his parents welcomed his home and offered their unconditional love and support.

But the pull of the Reccless Tigers, the lifestyle and the money did not disappear with the return to Las Vegas. Mr. Hong frequently returned to Northern Virginia for visits, and members of the gang came to visit him in Las Vegas. Mr. Hong resumed his participation in the drug distribution and in February 2019, agreed to help his oldest friend hide the body of Brandon White.

C. <u>Equity, Fairness, and Deterrence</u>

A sentence of 151 months would sufficiently reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the

public from future crimes of the defendant. Prior to the instant case, Mr. Hong's longest prison sentence was 9 months served in a county jail. A sentence of 151 months in a federal prison represents a 1700% increase in sentence.

A sentence of 121 to 151 months is both equitable and fair. The sentence is appreciably higher than the mandatory minimum, taking into account the seriousness of the charged distribution offense while also adding a significant additional penalty for the crimes of violence Mr. Hong participated in as a member of the gang. It also requires him to serve more than a day in prison for every day he was a member of the Reccless Tigers.

Mr. Hong has expressed remorse and acceptance of responsibility for his crimes. Despite his crimes, he retains the love and support of his parents and has both the ability and drive to return from prison as a law abiding member of the community.

D. <u>The Guideline Range / The Need to Avoid Sentencing Disparities</u>

A sentence with the recalculated guidelines range of 121 to 151 months is necessary to avoid unwarranted sentencing disparities. This court has already sentenced several members of the Reccless Tigers and their associates. Of those charged with the same offense, Sonesamay, was sentenced to the mandatory minimum 120 months[40]; Tyler Thang Le was sentenced to 135 months at the low end of his guidelines[41]; Park was sentenced to 132 reflecting the middle of his guidelines range.[42]

---

[40] 1:19-cr-57, United States v. Tyler Sonesamay
[41] 1:19-cr-57, United States v. Tyler Thang Le
[42] 1:19-cr-364, United States v. Soung Park

12

Sayf was charged with the kidnapping of Brandon White and a violation of U.S.C § 924(c). He was sentenced to 180 months.[43] Kevin Aagesen (hereinafter "Aagesen"), was charged with drug conspiracy and kidnapping Brandon White and sentenced to 188 months.[44] Abdulkadir was charged with drug conspiracy, kidnapping of Brandon White and a violation of U.S.C. 924(c). He was sentenced to 192 months.[45]

In sentencing members of an extensive conspiracy such as the Reccless Tigers, the Court must weigh the relative culpability of each Defendant to come before it. The Government frequently bases its recommendations on an assessment of culpability in relation to other, previously sentenced co-Defendants.

Because the of the nature of the conspiracy, many of the sentencing enhancements could be applied to most, if not all of the co-defendants. Indeed, on some occasions the Government has noted that enhancements apply but do not ask the court to apply these enhancements because they would result in an unwarranted sentencing disparity.[46] As a result, of the previously sentenced co-defendants, only Sayf, Aagesen and Abdulkadir have guidelines ranges higher than those calculated for Mr. Hong. Because of their direct participation and involvement in the kidnapping and murder of Brandon White, their guidelines were 360 months to life. Notwithstanding these guidelines and their "responsibility for [Brandon White's] death", the Government recommended, and this court sentenced them to 180, 188 and 192 months, respectively.

---

[43] 1:20-cr-52, United States v. Abdullah Sayf
[44] 1:19-cr-291, United States v. Kevin Aagesen
[45] 1:19-cr-57, United States v. Fahad Abdulkadir
[46] *See* 1:19-cr-00364, United States v. Soung Park, Dkt #39, Government Position on Sentencing ("But we are not asking that the court apply the … guidelines in this instance, as doing so would result in a unwarranted sentencing disparity for this defendant.")

Sayf, who received the lowest sentence of the three, was notably not a member of the Reccless Tigers. But, as the government noted, he was Brandon White's friend… and he was a critical component of the plan to lure Brandon White for the gang."[47]

Aagesen, who drove one of the two cars used to transport Brandon White and other gang members to and from his murder was noted as a "a longtime committed gang member who took part in violent acts and was intimately familiar with the gang's violence" and he "was extensively involved in the drug trafficking conspiracy."[48]

Abdulkadir "was a member of the gang, had gone on a number of "missions" for the gang, and also had incurred a substantial debt to Peter Le. He communicated directly with Peter Le prior to and during the kidnapping, and he was present when Brandon White was killed" and "was involved in the planning of the kidnapping and recruiting Sayf."[49] He had a history of violent crime, including "robbing drug dealers of drugs and firearms."[50]

A sentence exceeding that of Sayf, Aagesen or Abdulkadir would result in an unwarranted sentencing disparity. The murder of Brandon White was not planned by, committed by, known by, nor committed for the benefit of Mr. Hong. Mr. Hong had no knowledge that the murder had even occurred. Though he participated in the attempt to hide Brandon White's body a month after the murder, Mr. Hong's culpability must be less than those who directed, planned, committed and benefitted from Brandon White's murder. A sentence within the recalculated guidelines of 121 - 151 months would avoid an unwarranted sentencing discrepancy.

---

[47] 1:19-cr-52, United States v. Abdullah Sayf, Dkt #16, Government Position on Sentencing, pg. 6
[48] 1:19-cr-291, United States v. Kevin Aagesen, Dkt #43, pp. 14,15.
[49] 1:19-cr-57, United States v. Fahad Abdulkadir, Dkt #504, pp. 6,7.
[50] Id. at pg. 2

**CONCLUSION**

For the foregoing reasons, Kyu Wa Hong respectfully requests that this Court impose a sentence between 121 and 151 without imposing a fine given his inability to pay. Due to his consist drug use throughout most of his adult life, Mr. Hong would benefit from participation in the Residential Drug Abuse Program. Mr. Hong makes several designation requests due to the likelihood of keep away orders with other co-defendant. Mr. Hong requests he be designated to FCI Petersburg, FCI Fort Dix or FCI Allenwood in order to remain close to his brother who currently resides in Northern Virginia.

Respectfully submitted,

By: __/s/_____.
ADAM M. KRISCHER, ESQ.
Virginia State Bar No. 65646
Attorney for the Defendant
2007 15th Street North, Suite 201
Arlington, VA 22201
Phone: 703-248-0626
Fax: 703-248-8971
akrischer@dskvalaw.com

CERTIFICATE OF SERVICE

       I hereby certify that on the 8th day of January, 2021, I electronically filed the foregoing motion with the clerk of the court using the CM/ECF system, which will send an electronic copy to the following:

James Trump
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Jim.Trump@usdoj.gov

                                               By: /s/_____.
                                               ADAM M. KRISCHER, ESQ.
                                               Virginia State Bar No. 65646
                                               Attorney for the Defendant
                                               2007 15th Street North, Suite 201
                                               Arlington, VA 22201
                                               Phone: 703-248-0626
                                               Fax: 703-248-8971
                                               akrischer@dsklaw.com